**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YENMA PRENDERGAST, | ) | |
| | ) | **1:17-cv-00316** |
| Plaintiff, | ) | |
| | ) | **Judge Ellis** |
| v. | ) | **Magistrate Judge Kim** |
| | ) | |
| FIRST CHOICE ASSETS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

NOW COMES, the Plaintiff, YENMA PRENDERGAST, by and through her attorneys, SMITHMARCO, P.C. and moves this Honorable Court to enter summary judgment against the Defendant, FIRST CHOICE ASSETS. In support of her motion, Plaintiff states as follows:

## I.   INTRODUCTION – The Fair Debt Collection Practices Act and the Unsophisticated Consumer

In early December of 2016, Plaintiff, Yenma Prendergast, received two telephone calls from Defendant, First Choice Assets, a debt collection agency. In each of the telephone calls, a collector asked Plaintiff to provide Defendant with personal identifying information.

Perhaps not surprisingly, Plaintiff was reluctant to provide an unknown individual with private and personal information. In neither of the conversations between Plaintiff and Defendant's collectors did Defendant identify from where they were calling or the purpose of their call.

The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 *et seq*. provides that in each communication with a consumer a collector shall identify themselves and state the purpose of the call. Defendant did not do so in either instance. Rather, Defendant persisted to

1

pressure Plaintiff to divulge her social security number before advising her of the purpose of their call.

Defendant has answered Plaintiff's Complaint stating eleven (11) affirmative defenses, but adducing no facts to sustain any of them. Defendant has claimed that, despite Ms. Prendergast unequivocally identifying herself on the telephone, it was unable to confirm that they were talking to Plaintiff, and would therefore not provide the required proper and necessary disclosures. As will be established below, there remains no genuine issue of material fact in this case. Defendant contacted Plaintiff regarding a debt, communicated with her, and failed to make any disclosures required by the FDCPA. Moreover, there exist no facts whatsoever that would sustain a putative defense of bona fide error.

The FDCPA is a broad statute designed to protect consumers from a host of unfair, harassing and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors. *Heller v. Graf*, 488 F.Supp.2d 686, 691 (N.D.Ill.2007). And for those debt collectors who violate its provisions, the FDCPA imposes civil liability in favor of the consumers that they mistreat. *Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). The FDCPA is designed to protect consumers, and therefore it is to be liberally construed in favor of consumers to affect its purpose. *Ross v. Commercial Fin. Serv., Inc*., 31 F.Supp.2d 1077, 1079 (N.D.Ill.1999).

In the Seventh Circuit, whether a communication or other conduct violates the FDCPA is determined by evaluating a debt collector's conduct through the eyes of the "unsophisticated consumer." *Miller v. Javitch, Block & Rathbone, LLP*, 397 F.Supp.2d 991, 999 (N.D.Ind.2005) (citing *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996)); "The unsophisticated consumer standard

protects the consumer who is uninformed, naïve, or trusting, yet it admits an objective element of reasonableness." *Miller*, 397 F.Supp.2d at 999.

## II.     ARGUMENT

### A.  <u>Standard of Review</u>

Summary judgment is appropriate only when the pleadings and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A dispute over a fact will preclude summary judgment if the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although in considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Id.* at 255, 106 S.Ct. 2505, the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the nonmovant must present affirmative evidence beyond mere allegations to show that a genuine issue of material fact does exist. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505.

### B.  <u>Defendant is a Debt Collector under the FDCPA and was Collecting a Consumer Debt.</u>

Defendant is a debt collector collecting upon a consumer debt. The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. 15 U.S.C. §1692a(6). In the case at bar, Defendant was hired by DNF Associates to collect a debt originally owed to JB Robinson Jewelers. See Statement of Agreed Facts (SAF) 10, 12. There is no argument by Defendant that they were not a debt collector as defined by the FDCPA.

### C. The Calls Made to Plaintiff Were "Communications" under the FDCPA

Under the FDCPA, a "communication" is the conveying of information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C. §1692a(2). Even though the collector may not mention the debt, or refer to a debt, a phone call to a debtor may be a communication nonetheless. *Ramirez v. Apex Financial Management, LLC*, 567 F.Supp.2d 1035 (N.D.Ill.2008).

*Ramirez* is a case out of the Northern District of Illinois that is instructive here. In *Ramirez*, the plaintiff sent a letter to the defendant debt collector advising to "cease and desist" all communications.[1] Nonetheless, the defendant proceeded to make twenty-one calls to the plaintiff. The defendant argued that it did not specifically mention the debts in the phone calls, and the calls did not clearly convey information regarding the debt, and therefore under a strict reading of the FDCPA, the defendant cannot be held liable for its phone calls.

Judge Norgle found the defendant's argument unpersuasive and held that the calls were communications under the FDCPA. The court stated that the messages, in essence, conveyed pertinent information to Plaintiff, including the fact that there was a matter that he should attend to and instructions on how to do so. This is, in the very least, an indirect communication regarding the plaintiff's debt. *Ramirez*, 567 F.Supp. 1035, 1041 (Ill N.D. 2008). The court

---

[1] 15 U.S.C. 1692c(c) provides that "[i]f a consumer notifies a debt collector in writing that…the consumer wishes the debt collector to cease further communication from the consumer, the debt collector shall not communicate further with the consumer with respect to such debt.." 15 U.S.C. 1692c(c). Therefore, communications made after receipt of a "cease and desist" letter would violate the FDCPA.

noted that Congress's intent in enacting the FDCPA calls for a broad construction of its terms in favor of the consumer. "Working under this construct, it becomes apparent that messages left on a debtor's answering machine can be considered indirect communications regarding the debt, even if the debt collector fails to expressly mention that the call pertains to collection, payment, deadlines or any other observable characteristics of a collection call. Any other interpretation would require a claimant to prove, without exception, that the debt collector conveyed direct information about the debt. This is not what the statute calls for." *Id* at 1041.

Moreover, a number of courts that have addressed this issue have held that a phone message referencing an "important matter" or similar language may be considered a "communication" under the FDCPA. See e.g., *Foti v. NCO Fin. Sys., Inc.,* 424 F.Supp.2d 643, 654–60 (S.D.N.Y.2006) (collector's pre-recorded telephone message, requesting debtor to make a return call regarding a "business matter," was a "communication" within meaning of the FDCPA); *Masciarelli v. Richard J. Boudreau & Assocs.*, LLC, 529 F.Supp.2d 183, 185–86 (D.Mass.2007) (collector not identifying himself but stating that collector will treat silence as permission to contact employer was a communication under the FDCPA); *Costa v. Nat'l Action Fin. Servs.*, 2007 WL 4526510, at *5 (message from collector stating "my name is Elizabeth. I received a phone call in my office for you" was a communication under the FDCPA (E.D.Cal. Dec.19, 2007); *Hosseinzadeh v. M.R.S. Assocs., Inc.,* 387 F.Supp.2d 1104, 1116 (C.D.Cal.2005) (collector stating my name is Clarence Davis. I have some very important information to discuss with you in reference to a file that has been forwarded to my office that involves you personally" was a communication under the FDCPA).

In the case at bar, there can be no argument that the calls to Ms. Prendergast were "communications" under the FDCPA. In the first call, the collector stated that the call was "in

regards to a letter that we are supposed to be mailing." SAF 14.  In the second call, the collector

states that the call was "for the proper delivery of a required letter for Yenma." SAF 18.  This

statement is akin to the comment that the calls are about an "important matter."  Referencing a

required letter that the collector intends to deliver to Ms. Prendergast is an indirect

communication about the consumer's debt.   Plaintiff is not required to establish that the callers

conveyed direct information regarding the debt or that the letter they were going to send was a

collection letter.  As Judge Norgle and the other courts following or in agreement with *Ramirez*

state, that is not the requirement of the FDCPA, and to require more would defeat the purpose of

the statute.

> D. **Defendant Failed to Make Meaningful Disclosure of the Identity of the Callers and the Purpose of the Call**.

The primary issue in the case at bar deals with the Defendant's failure to disclose the identity

of the caller and the purpose of the call – i.e. that it was an attempt to collect a debt.  The two

sections of the FDCPA that apply to this situation are §§1692d(6) and 1692e(11).

Section 1692d(6) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section.
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.  15 U.S.C. §1692d(6).

15 U.S.C. § 1692d(6) provides that all debt collectors provide meaningful disclosure of their

identity when communicating with consumers by telephone. Meaningful disclosure requires that

the debt collector state his or her name, capacity, and provide enough information to the

consumer as to the purpose of the call.  *Costa v. Nat'l Action Fin. Servs*., 634 F.Supp.2d 1069,

1074 (E.D.Cal.2007).

6

Section 1692e(11) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action. 15 U.S.C. §1692e(11).

Taken together, these sections provide that a debt collector contacting a consumer must provide meaningful disclosure of the caller's identity, inform the consumer that he or she is a debt collector, and that the purpose of the communication is to collect on a debt. 15 U.S.C. §§ 1692d(6), 1692e(11). *Doshay v. Global Credit Collection Corp.* 796 F.Supp.2d 1301 (D. Colo 2007).

In *Doshay*, just as in the case at bar, the defendant debt collector called the plaintiff without identifying himself as a debt collector or articulating that the purpose of the call was to collect a debt. The court held that there was no genuine issue of material fact, and granted summary judgment for the plaintiff as the FDCPA is a strict liability statute. *Doshay,* 796 F.Supp.2d 1301, 1304. The court found that the defendant admitted to leaving the voicemail message; it had not disputed the accuracy of the message and had failed to address any of the plaintiff's arguments on the issue. The collector neither identified himself as a debt collector nor articulated that the purpose of the voicemail message was to collect a debt. Thus, the court held, there was no genuine issue of material fact in dispute. Because the voicemail message lacked meaningful disclosure as required by 15 U.S.C. §§ 1692d(6) and 1692e(11), partial summary judgment was granted. *Id.* at 1304.

In the instant matter, there is also no genuine issue of fact as to whether Defendant violated these two sections of the FDCPA by failing to meaningfully identify the caller and identify that the purpose of the call was the collection of the debt. Defendant does not deny having the conversations or dispute the content of the calls. In each call, the caller dialed Ms. Prendergast's personal cellular phone and Ms. Prendergast answered. The first caller identified himself merely as Louis. The caller indirectly communicated the debt by advising that he had a letter he was supposed to be mailing. He confirmed her address, but when Ms. Prendergast asked what the call was about, the collector would not answer. Not having any idea who was calling her, Plaintiff naturally refused to provide any more information other than to advise that he could send whatever letter he had to the address he recited to her. This was Ms. Prendergast's correct address. Nothing was ever sent to her. The caller made no other disclosures. SAF 14.

The second call was more involved. This time, the collector identified herself as Jennifer Heeber, but provided no company information or other identifying information. Rather, Ms. Heeber also stated that she had a letter she wanted to deliver to Ms. Prendergast. However, before she would send that letter, she wanted confirmation as to who she was speaking with. Thus, Ms. Prendergast identified herself, stating "Ok, this is Yenma." With that information, Ms. Heeber stated that she would be happy to let Ms. Prendergast know what it is about, but then went on asking more personal information. For the second time, the collector confirmed Plaintiff's address. Then, though the collector previously stated that she could divulge the purpose of the call, or contents of the letter, Ms. Heeber then wanted Ms. Prendergast to confirm her social security number.

Ms. Prendergast would not divulge any part of her social security number to a person on the phone who has merely identified herself by name and nothing more. Defendant was aware

8

that consumers may not want to expose their social security numbers.  SAF 20.  Yet, Ms. Heebner continued to attempt to convince Ms. Prendergast to divulge her social security number over the phone.  Rather than identifying the purpose of the call was to collect a debt, as the FDCPA required at that point, Ms. Heebner continued to argue with Ms. Prendergast that she should divulge her social security number.  As the FDCPA is a strict liability statute, there is no question of fact here that Defendant's collectors failed to identify themselves and identify the purpose of the call.  As discussed below, Defendant's claim that they could not divulge the purpose of the call because they could not confirm who they were speaking to is of no avail under the bona fide error defense or any affirmative defense.

### E.  There Exists No Facts Which Would Sustain a Bona Fide Error Defense

Defendant has filed eleven (11) affirmative defenses, none of which were borne out by any facts in the case.  In fact, when requested on multiple occasions to provide any facts to support its affirmative defenses, Defendant was unable.  SAF 30.  Defendant is seemingly making the argument that it did not know that it was speaking to Yenma Prendergast, despite her admitting it was her on the phone.

This argument is unavailing.  First and foremost, Defendant ***was*** speaking to the consumer, Ms. Prendergast, and there is absolutely no evidence to the contrary.  Defendant called Plaintiff's cell phone number, and Plaintiff answered.  SAF 2, 13, 17.  Plaintiff identified herself by stating, "OK this is Yenma."  SAF 18.  Plaintiff then confirmed her address for the second time.  SAF 18.  Defendant is not collecting any debts for any other person of the same name.  SAF 27.  There exists absolutely no evidence that the person that answered the phone was not the Plaintiff or that there was any doubt about her veracity when she claimed "this is Yenma."  Thus, it was incumbent upon Defendant to provide the necessary disclosures of its

9

identity and that its purpose of the call was the collection of a debt. Instead, the collector continued to pressure Plaintiff to recite the last four digits of her social security number – which Plaintiff rightfully declined to provide.

Having failed to make the proper disclosures and therefore violating the FDCPA, Defendant can only avoid liability by proving that the violation was the result of a bona fide error. 15 U.S.C. 1692k(c). For the bona fide error defense to be successful, Defendant has the burden of establishing that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error. *Edwards v. Niagara Credit Solutions, Inc*. 586 F.Supp.2d 1346 (N.D. Georgia 2008). To qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors. If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of "procedures reasonably adapted to avoid any such error" must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. *Smith v. National Credit Systems*, 807 F.Supp.2d 836 (D. Ariz. 2011) ( citing *Reichert v. National Credit Systems*, 531 F.3d 1002 (9th Circ. 2008).

In the case at bar, since Defendant claims that although the person who answered the phone identified herself as the consumer, they were still unsure that it was in fact her. Therefore, if Defendant wishes to avoid this type of violation, it must articulate reasonable procedures designed to determine whether the person answering the phone is the consumer. Defendant has articulated no such facts or procedures. Rather, Defendant has produced an Operations Policy Handbook that instructs its employees on keeping in compliance with the FDCPA. SAF 21. Reliance on the procedures in the handbook fails as a bona fide error defense because (1) the

conduct of the collectors was intentional and (2) the manner in which the policy was adapted was insufficient to avoid the error.

First, the conduct was intentional. Both the initial caller, Louis, and the second caller, Ms. Heebner, intentionally did not disclose the purpose of the call. Rather, they asked for personal information about Ms. Prendergast she was not willing to provide at that time. Defendant is well-aware that consumers may not want to divulge their social security numbers to strange callers. SAF 20. Because of this, Defendant provides instruction to its employees to instead seek to confirm the consumer's date of birth. SAF 23. Here, the collectors made the personal decision to ignore the handbook and their teachings, and instead continue to pressure Ms. Prendergast to confirm her social security number, telling her that she (the collector) had the number, and just wanted Ms. Prendergast to provide the last 4 digits. The evidence in this case has only established that Defendant called Plaintiff and failed to make required disclosures. Summary judgment should therefore be granted.

Furthermore, Defendant must also explain the manner in which the procedures were adapted to avoid the error. In this regard, Defendant has provided nothing. Defendant was asked to provide facts that support its affirmative defense and has responded that it has none. SAF 30. Regardless, the manner in which these procedures were adapted is apparent from the record that they were not adapted or followed at all. SAF 22-29.

It is apparent from the record that the only reason that the collectors would not disclose where they were calling from or why they were calling was because they could not get Ms. Prendergast to give out her social security number. When a collector at First Choice Assets makes a call in an effort to collect a debt, it manually enters notes of what took place in its computer system called "FileMaker." SAF 15. When Louis made the first call to Plaintiff, he

recited her address, and Ms. Prendergast confirmed that he could send his letter to that address. After that call, Louis entered into FileMaker that he called and talked to a female that would not disclose any information whatsoever. SAF 16.

When the second call was made, it was made to the same number. SAF 17. Despite Louis's entry and his supposed doubts about who he was calling, Defendant made absolutely no attempt to investigate at that time into the information it had on Ms. Prendergast. SAF 28. Rather, Defendant had a different collector call the same number and attempt the same tactic. This time, after Ms. Heebner was specifically told that she was speaking with the Plaintiff and confirmed the same address, Ms. Heebner wrote in "FileMaker" only that the person she spoke to refused to confirm her social security number. She made no comment that the consumer identified herself and confirmed the same address as the previous call. SAF 19.

Plaintiff identified herself to Defendant. Defendant obviously did not consider the contact information that it had for Ms. Prendergast was incorrect, otherwise it would have performed some investigation into Plaintiff's location rather than calling the same number and trying the same tactic. However, Defendant did nothing else but called Plaintiff at the same number utilizing the same tactics. It was because Ms. Prendergast would not divulge social security information to Defendant that the collectors would not make the necessary disclosures to her. Yet, Defendant's own handbook instructs the collectors that this may be the scenario they face, and when they do, they should seek to confirm the date of birth instead. This was not even attempted by Defendant's collectors. SAF 21-25.

There is no bona fide error defense on which Defendant can prevail in this case, given the burden of Defendant and the utter lack of any evidence to support any such defense. There exists

no other facts to support the eleven (11) other defenses filed by First Choice Assets. Summary judgment should therefore be granted.

### F. **Plaintiff is Entitled to $1,000 in Statutory Damages.**

If a debt collector is found to have violated any provision of the FDCPA, the plaintiff may be entitled damages that the court may allow, not to exceed $1,000. 15 U.S.C. §1692k(a)(2). In determining the amount of liability, the court shall consider the frequency and persistence of the non-compliance, the nature of the noncompliance, and the extent to which the non-compliance was intentional. 15 U.S.C. §1692k(b)(1).

The court in *Edwards v. Niagara Credit Solutions* was confronted with the issue of awarding damages. *Edwards*, 586 F.Supp.2d 1346. In *Edwards*, the collector left a number of messages on the plaintiff's answering machine, none of which stated the name of the collection agency or disclosed the purpose of the call – such as in the instant case. Rather, the collector would state their name, and then state that the message was "important" and "intended for Brenda Edwards" and asked Ms. Edwards to call back and provided a file number. *Id* at 1349.

The court found that an award of $1,000.00 was appropriate. The court noted that it was undisputed that the conduct at issue was company policy which made violating the FDCPA an ordinary course of business for the defendant, and the nature of noncompliance was sufficiently egregious to impose the maximum of $1,000.00. *Id* at 1354. The court also noted that even if the violation was not intentional, it was at a minimum, measured and calculated. The defendant deliberately chose its policy, and must face the consequences of its decision. *Id*.

In the instant case, the conduct here was intentional. While First Choice Assets presents a company policy that was designed to teach collectors how to obtain personal information about consumers, that policy is willingly ignored. Two separate collectors contacted Ms. Prendergast

and engaged in the exact same tactics. When asked what the call was about, both collectors told her that there was a required letter that they needed to send to her. Though the first caller did not spend nearly the same amount of time as the second, Ms. Heebner had ample opportunity to change directions from pushing for Ms. Prendergast's social security number and either accept who she was speaking to or attempt to confirm a date of birth instead. Yet she refused and continued onward, causing more paranoia for Ms. Prendergast. Not only did she refuse, but notated the account that Ms. Prendergast would not give her social security number. Still, Defendant continues to fight this case, now arguing that they could not be sure that Ms. Prendergast was the one on the phone.

The non-compliance was frequent in that each collector participated in the same conduct in each attempt to contact Plaintiff. This establishes a pattern of ignoring a policy designed to avoid these particular violations of the FDCPA. The non-compliance was of a sufficient nature to require an award of $1,000. As can be heard by the calls, Ms. Prendergast is faced with a stranger calling her for a completely unknown reason. The stranger seemingly had her address and social security number and wanted to send her something. The stranger would not divulge anything about this matter unless they could have her social security number.

As Ms. Prendergast explained in her affidavit, this caused great concern and paranoia. Exhibit A, ¶11,14. The final factor in considering the amount of damages to award was the extent to which the conduct was intentional. As explained above, the collectors took it upon themselves to ignore their FDCPA teachings and push for information that they knew many consumers would be reluctant to share. Ms. Heebner continued to pressure Ms. Prendergast for her social security number despite the fact that Ms. Prendergast was not inclined to give it away. When considering the facts of this case with the factors that are to be considered in making a

14

damage award, Defendant deliberately chose its path, and should have to pay for the consequences of its decision.

## III.   <u>CONCLUSION</u>

Defendant had made two separate communications to Plaintiff in an attempt to collect the debt.  Upon communicating with a consumer, it is required to make meaningful disclosure of the callers identity and state the purpose of the call is the collection of a debt.  Defendant did not make any disclosures.  Rather, Defendant called Plaintiff, told her cryptically that there was a letter being sent to her, and pressured her to provide her social security number.   Defendant's conduct violates the FDCPA.  Its argument that it did not know it was talking to the Plaintiff is unavailing.  Aside from the complete lack of evidence that the recipient of the call was anybody BUT Ms. Prendergast, she specifically identified herself, thus requiring the collectors to identify themselves.  Defendant's claims of affirmative defenses are similarly unavailing.  Defendant has the burden of proof to establish the existence of a bona fide error defense. Defendant has provided no proof whatsoever to support its burden.  The collectors made a purposeful decision to ignore what they were instructed, and continued to pursue Plaintiff's social security information.  Finally, Plaintiff has established that the violations were sufficient in nature to impose an award of $1,000 in damages to the Plaintiff.

WHEREFORE, Plaintiff, by and through her attorneys, respectfully pray that this Honorable Court grant summary judgment in her favor, award $1,000 in damages, and set a briefing schedule for Plaintiff's petition for attorney fees and costs pursuant to 15 U.S.C. 1692k.

Respectfully submitted,
**YENMA PRENDERGAST**

By: ___s/ Larry P. Smith_____
Attorney for Plaintiff

15

Dated: October 6, 2017

Larry P. Smith (Atty. No.: 6217162)
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:  (312) 324-3532
Facsimile:  (888) 418-1277
E-Mail:       lsmith@smithmarco.com

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **YENMA PRENDERGAST,** | ) | |
| | ) | **1:17-cv-00316** |
| **Plaintiff,** | ) | |
| | ) | **Judge Ellis** |
| **v.** | ) | **Magistrate Judge Kim** |
| | ) | |
| **FIRST CHOICE ASSETS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>CERTIFICATE OF SERVICE</u>**

**To:**   Brendan H Little
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza, Suite 1700
Buffalo NY 14202

     I, Larry P. Smith, an attorney, certify that on **October 6, 2017**, I shall cause to be served a copy of **Plaintiff's Memorandum in Support of Motion for Summary Judgment**, upon the above named individual(s) by: depositing same in the U.S. Mail, prior to 5:00 p.m., postage prepaid; messenger delivery; Federal Express; facsimile transmitted from (888) 418-1277; email; and/or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

| | | | |
|---|---|---|---|
| \_\_\_\_ | U.S. Mail | \_\_\_\_ | Facsimile |
| \_\_\_\_ | Messenger Delivery | \_\_\_\_ | Email |
| \_\_\_\_ | Federal Express/UPS |   X   | ECF |

By:    s/ Larry P. Smith      
           Attorney for Plaintiff

<u>Dated: October 6, 2017</u>

Larry P. Smith (Atty. No.: 6217162)
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone: (312) 324-3532
Facsimile: (888) 418-1277
E-Mail:     lsmith@smithmarco.com