IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YENMA PRENDERGAST, | ) | |
| | ) | 1:17-cv-00316 |
| Plaintiff, | ) | |
| | ) | Judge Ellis |
| v. | ) | Magistrate Judge Kim |
| | ) | |
| FIRST CHOICE ASSETS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FIRST CHOICE ASSETS, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

On January 16, 2017, the Plaintiff Yenma Prendergast ("Plaintiff") filed a Complaint alleging that Defendant First Choice Assets, LLC ("FCA") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"). (Dkt. 1). On February 19, 2017, FCA filed an Answer denying the allegations in the Complaint. (Dkt. 5).

As is relevant to the instant motion, Plaintiff's Complaint alleges that FCA violated the FDCPA in one or more of the following ways:

> (1) engaging in conduct the natural consequence of which is to harass, oppress or abuse the Plaintiff in connection with the collection of debt in violation of § 1692d;
>
> (2) placing a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of § 1692d(6);
>
> (3) failing to disclose in communications that said communication was from a debt collector and that any information obtained during the communication would be used for the purpose of collecting a debt in violation of § 1692e(11);
>
> (4) failing to comply with § 1692g(a), which requires a debt collector to send the consumer a written notice containing certain statutorily required information within five days of the initial

1

>communication with the consumer, if that information was not contained within the initial communication; and
>
>(5) being otherwise deceptive and failing to comply with the provisions of the FDCPA. (Dkt. 1, ¶ 28).

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. "[Section] 1692e [ ] was enacted 'to prevent 'abusive, deceptive, and unfair debt collection practices'" Tolentino v. Friedman, 46 F.3d 645, 650 (7th Cir. 1995) (citing Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 27 (2d Cir.1989)). "Specifically, 15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive or misleading representation in connection with the collection of any debt. The statute itemizes sixteen communications that constitute violations of that provision, including at § 1692e(11), the failure to disclose in the initial written communication to the consumer that the debt collector is attempting to collect a debt and that any information will be used for that purpose." Marquez v. Weinstein, Pinson & Riley, P.S., 836 F.3d 808, 811 (7th Cir. 2016).

In certain cases, a consumer may decide to play coy and refuse to disclosure his or her identity. When that occurs, debt collectors are put in a difficult position should they desire to comply with the FDCPA. This is because the FDCPA requires debt collectors, in an "initial communication" with the consumer to disclose that they are a debt collector attempting to collect a debt. 15 U.S.C. § 1692e(11). However, in a case where the debt collector is unable to confirm the identity of person with whom they are speaking, a debt collector is extremely limited in the information it is permitted to disclose and it is expressly prohibited from disclosing that the consumer owes any debt or that the call is from a debt collector. 15 U.S.C. § 1692b. This case

presents precisely these circumstances. FCA never disclosed that it was a debt collector attempting to collect a debt because Plaintiff repeatedly refused to confirm her identity such that FCA was unable to determine whether it had contacted the actual Plaintiff. By doing so, Plaintiff effectively prevented FCA from providing the disclosures required by § 1692e out of fear of violating other provisions of the FDCPA. *See* 15 U.S.C. §§ 1692b and 1692c(b). Had Plaintiff confirmed her identity, rather than repeatedly refusing to confirm same, this matter would not be before the Court.

For the reasons set forth herein, the undisputed facts demonstrate that FCA did not violate the FDCPA and, as a result, the Court should grant FCA's motion for summary judgment pursuant to FED. R. CIV. P. 56 and dismiss the Plaintiff's Complaint in its entirety.

## FACTUAL BACKGROUND

On December 2, 2016, FCA began attempts to contact the Plaintiff. FCA contacted a female on two occasions by telephone - once on December 2, 2016 and once on December 6, 2016. *See Joint Statement of Undisputed Material Facts ("Joint Statement")*, ¶¶ *14, 18*. During both conversations, FCA's representatives were unable to confirm whether they had spoken with the actual Plaintiff.

The December 2, 2016 telephone call begins with an FCA representative asking to speak with Ms. Yenma Prendergast in order to confirm her location information. *Id.* ¶ *14*. The FCA representative recited one of the addresses on file for Ms. Prendergast. *Id.* The female voice on the other end of line inquired as to what the call was regarding but did not identify herself as the Plaintiff nor would she confirm the address provided by the FCA representative. *Id.* The FCA representative informed the unidentified female voice on the other end of the line that he was not able to discuss the subject of the communication prior to confirming that he was speaking with

3

Ms. Prendergast. *Id.* The female voice stated that she was not prepared to disclose any information and ended the December 2, 2016 telephone call. *Id.* Importantly, the female voice on the other end of the line never identified who she was nor did she confirm the address for Yenma Prendergast. After the call, the FCA representative entered the following notation in FCA's computer system indicating that she spoke with a third party: "Called Out/Talked to Other: 773-536-0882- female would not disclose any info whatsoever, wouldn't even say whom she was." *Id. at ¶ 16*. Accordingly, FCA's agent who spoke to the female believed she did not make contact with the actual Plaintiff.

Thereafter, on December 6, 2016, another FCA representative initiated a second telephone call. The FCA representative identified herself as Jennifer Hebner and asked to speak with Yenma Prendergast. *See id., ¶ 18.* The unidentified female voice on the other end of the line asked what the telephone call was regarding, in response to which Ms. Hebner stated that the call was regarding the proper delivery of a letter to Ms. Prendergast. *Id.* The female voice then inquired as to what the letter was regarding, in response to which Ms. Hebner stated that she could not discuss the subject matter of the letter without first confirming that she was speaking with Yenma Prendergast because it is against the law for her to give out personal information to a third party. *Id.* The female voice then stated "this is Yenma." *Id.* In response and unsure she was speaking with the actual Plaintiff, Ms. Hebner stated she would be happy to state what the letter was regarding but first asked the female voice to confirm her address. *Id.* The female voice responded by stating "you can go ahead and send whatever you need to send there," but refused to confirm the address. *Id.* In a second attempt to confirm the identity of the female on the other end of the line, Ms. Hebner asked the female voice to confirm Ms. Prendergast's social security number. *Id.* The female voice again refused to confirm her identity by providing the

4

requested information. *Id.* Shortly thereafter, the female voice abruptly ended the conversation stating that she had to take another telephone call. *Id.* After the call, Ms. Hebner entered the following notation in FCA's computer system: "Called out/Talked to: Other- refused to confirm ssn." *Id.*, ¶ *19*. Like FCA's first agent, this agent did not believe she made contact with the actual Plaintiff.

## ARGUMENT

### I. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material facts exists when a reasonable jury could return a verdict for the nonmoving party. A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248; 252 (1986).

While the court will view all evidence and inferences in a light most favorable to the nonmoving party, "[a] party may not rest on mere allegations or denials of his pleadings" or "bare contention[s] that an issue of fact exists." Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

### II. FCA did not Violate FDCPA § 1692e(11)

Plaintiff's Complaint alleges that FCA violated § 1692e(11) by failing to disclose that the two calls at issue were from a debt collector and that any information obtained during the calls would be used for the purpose of collecting a debt. (Dkt. 1, ¶ 28).

In this case, FCA was not required to provide the disclosures set forth in § 1692e(11). Section § 1692e(11) provides:

5

> Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . .

15 U.S.C. § 1692e(11).

According to the plain language set forth above, § 1692e(11) only applies where there has been an "initial communication," whether written or oral, with a consumer. The FDCPA defines "communication" as "the conveying of information *regarding a debt* directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2) (emphasis added); *see also* Battle v. Gladstone Law Group, P.A., 951 F. Supp.2d 1310, 1314-15 (S.D. Fl. 2013) (in order for contact between a plaintiff and defendant to qualify as an initial communication, the contact must directly or indirectly convey information regarding the debt). Accordingly, in order to trigger the disclosure requirements of § 1692e(11), an initial communication must reference or communicate information regarding a debt. Moreover, for claims concerning §1692e, this Court must assess whether the violation was material. "For such claims, we must assess allegedly false or misleading statements to determine whether they could have any practical impact on a consumer's rights or decision-making process, that is whether they represent the kind of conduct the Act was intended to eliminate." Janetos v. Fulton Friedman & Gullace, LLP, 825 F.3d 317, 324 (7th Cir. 2016). Said differently, violations of § 1692e are generally not actionable unless they are material - that is, if a misstatement would not lead the unsophisticated consumer in intelligently responding to an effort to collect a debt, the misstatement does not violate the FDCPA. Hahn v. Triumph P'ships LLC, 557 F.3d 755, 758 (7th Cir. 2009).

6

In the present case, FCA's obligation to provide the disclosures required by § 1692e(11) was never triggered. Given that Plaintiff refused to confirm her identity during the December 2, 2016 and December 6, 2016 telephone calls, FCA had no obligation to provide the disclosures.

As demonstrated in the recordings, FCA's representatives never stated they were debt collectors or that they were attempting to collect a debt because they were unable to confirm that they were speaking with the actual Plaintiff. *Joint Statement, Exhibits C and D.* When a debt collector is speaking with anyone other than the consumer who owes the debt, the debt collector is limited as to what it can say. 15 U.S.C. § 1692b. Here, FCA was not obligated to give the disclosure, nor could it have, because FCA was unable to confirm the Plaintiff's identity. *See* 15 U.S.C. § 1692b (limiting any debt collector communicating with any person other than the consumer to identifying himself, stating that he is confirming or correcting location information, and, only if expressly requested, identifying his employer). In fact, "[u]nder the FDCPA when a debt collector is unable to confirm the debtor's identity via the debtor's Social Security number, the debt collector must terminate the call." Galligan v. FMS, Inc., 2012 WL 1207214, *4 (D. Kan. April 11, 2012).

Given that Plaintiff refused to confirm her identity, FCA could not disclose it was a debt collector. If the FDCPA precluded FCA from disclosing it was a debt collector, FCA could not have misled Plaintiff in intelligently responding to an effort to collect a debt because Plaintiff had no idea that FCA was a debt collector or calling to collect on a debt. *See* Hahn, *supra*. Thus, the lack of a material violation requires dismissal of this claim.

Any potential argument that Plaintiff identified herself during the December 6, 2016 telephone call is insufficient to raise an issue of fact in response to the instant motion. Plaintiff's flippant statement "this is Yenma" during the December 6, 2016 telephone call was insufficient

7

to permit FCA to conclude that it had contacted the Plaintiff. This conclusion is supported by the fact that, after both the December 2, 2016 and December 6, 2016 telephone calls, the FCA representatives entered the following notations in FCA's computer system: (1) "Called Out/Talked to Other:773-536-0882- female would not disclose any info whatsoever, wouldn't even say whom she was" (*Joint Statement, ¶ 16*); and (2) "Called out/Talked to: Other- refused to confirm ssn." *Id.*, *¶ 19*. Moreover, Plaintiff's identity was further obfuscated by the fact that FCA had two addresses for Plaintiff. FCA was trying to confirm that Plaintiff resided at 11134 South Ave. E., Chicago, IL 60617 because that address differed from the address Plaintiff had provided when she applied for credit with JB Robinson Jewelers - 787 Wilson Ave., Apt. 15, Glen Ellyn, IL. *Compare id., ¶¶ 14 and 18 with ¶ 2.*

Section 1692e is designed to prevent abusive, deceptive and unfair collection practices. With this purpose in mind, the only reasonable conclusion is that no violation if § 1692e(11) occurred in this case. FCA did not mislead Plaintiff into believing that it was someone it was not or that it had called from some other purpose in order to trick Plaintiff. To the contrary, it was Plaintiff's own actions that prevented FCA from complying with Section 1692e(11). Accordingly, FCA did not utilize any false, deceptive or misleading representations in an attempt to collect Plaintiff's debt and did not violate § 1692e(11).

### III. FCA did not Violate FDCPA § 1692g(a)

The Plaintiff's allegation that FCA violated § 1692g(a) fails for the same reasons set forth above. Section § 1692g(a) requires, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," that the debt collector send the consumer a written notice containing certain statutorily required information, including the amount of the debt and the name of the creditor to whom the debt is owed. 15 U.S.C. § 1692g(a).

As set forth above, FCA never engaged in an "initial communication" with a consumer as contemplated by the FDCPA. Specifically, FCA did not convey any information regarding any debt during either telephone conversation as FCA was unable to determine whether it had contacted the actual Plaintiff. Moreover, as demonstrated by FCA's account notes, the FCA collectors believed they were speaking to a third-party and not Plaintiff. Specifically, both the December 2, 2016 and December 6, 2016 call entries indicate that that the collectors talked to a third-party. *Joint Statement, ¶¶ 16, 19*.

Accordingly, FCA never engaged in an "initial communication" with the Plaintiff sufficient to trigger the disclosure requirements of § 1692g and, therefore, FCA was under no obligation to comply with the requirements of § 1692g(a) until it communicated with the Plaintiff.

**IV.    FCA's Conduct was Not Harassing, Oppressive or Abusive in Violation of 15 U.S.C. § 1692(d)**

Plaintiff's Complaint alleges that FCA violated § 1692d of the FDCPA by engaging in conduct the natural consequence of which was to harass, oppress or abuse the Plaintiff. (Dkt. 1, ¶ 28). Section 1692d provides, in pertinent part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

15 U.S.C. § 1692d.

In this case, the recordings of the two communications between the unknown female and FCA demonstrate unequivocally that FCA and/or its representatives did not engage in: (1) the use or threat of use or violence or other criminal means to harm the physical person, reputation, or property of any person; (2) the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader; (3) the publication of a list of consumers

9

who allegedly refuse to pay debts; or (4) the advertisement for sale of any debt to coerce payment of the debt. *See* § 1692d(1)–(4). Thus, it is beyond dispute that FCA did not violate § 1692d(1)–(4) as a matter of law. Consequently, this portion of FCA's argument will focus on § 1692d(5) and (6).

### A.   15 U.S.C. § 1692d(5)

Section 1692d(5) provides that it is a violation of § 1692d for a debt collector to "caus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

"Whether multiple phone calls demonstrate a debt collector's intent to annoy, abuse or harass is ordinarily a question of fact for the jury. But judgment as a matter of law is appropriate where, based on the facts of the case, no reasonable jury could find that the debt collector had the intent to annoy, abuse, or harass the consumer. Relevant considerations include the volume and pattern of calls placed." Dore v. Five Lakes Agency, Inc., 2015 WL 4113203, *5 (N.D. Ill. July 8, 2015) (citations omitted); *see also* Majeski v. I.C. System, Inc., 2010 WL 145861, * 2-4 (N.D. Ill. Jan 8, 2010) (whether repeated phone calls were made with intent to annoy, abuse, or harass depends on the volume and pattern of calls).

This Court and several other district courts have rejected claims that § 1692d(5) has been violated for calls far greater in volume than occurred in this case. For example, in Dore, this Court granted the defendant-debt collector's motion for summary judgment on the plaintiff's 1962d(5) claim finding that 51 calls with a total of 6 conversations over a 30 month period was not done with the intent to annoy, abuse or harass as a matter of law. *See* Dore, 2015 WL 4113203; *see also* Carman v. CBE Grp., Inc., 782 F. Supp.2d 1223, 1229 (D. Kan. 2011) (dismissing the plaintiff's 1692d(5) claim where there were 149 calls in a two month period);

10

Tucker v. CBE Group, Inc., 710 F. Supp.2d 1301 (M.D. Fla. 2010) (dismissing the plaintiff's 1692d(5) claim because 57 phone calls and as many as 7 in single day were insufficient to create a triable question of fact).

Moreover, in addition, the courts have held that numerous calls alone are insufficient to establish a 1692d(5) violation. For example, in Valle v. Nat'l Recovery Agency, 2012 WL 1831156 (M.D. Fla. May 18, 2012), the plaintiff claimed that 82 calls in a 252-day span was insufficient to hold the defendant liable pursuant to § 1692d(5). In rejecting the plaintiff's claim and dismissing her cause of action, the district court noted that the plaintiff produced no other evidence of harassing conduct. Id., *2. Specifically, there was no evidence that the defendant called the same number twice in one day; the plaintiff and defendant only spoke on two occasions; the defendant never threatened the plaintiff; the defendant never called at odd hours; the plaintiff never disputed the debt; and the plaintiff never asked the calls to stop. Id.; see also, Pugliese v. Prof'l Recovery Serv., 2010 WL 2632562 (E.D. Mich. June 29, 2010) (despite 350 calls in 8 months, the 1692d(5) claim was dismissed because there was no evidence to demonstrate the defendant acted intentionally to annoy, harass or abuse).

In analyzing a § 1692d(5) claim, the courts also look to whether the defendant-debt collector actually spoke with the consumer or whether the debt collector had a difficult time getting in contact with the consumer. *See generally* Abrams v. Miramed Revenue Group, LLC, 2013 WL 1319385, *6 (S.D. Ind. March 29, 2013) (dismissing the plaintiff's § 1692d(5) claim because 11 calls over 39 days without actually speaking to the plaintiff suggests a difficulty reaching the plaintiff rather than an intent to harass); Saltzman v. I.C. Sys., Inc., 2009 WL 3190359, *7 (E.D. Mich. Sept. 30, 2009) (holding similarly). Moreover, "in order to survive summary judgment, the non-moving party must show evidence that the creditor acted in a

11

manner beyond attempting to contact the debtor." Bancroft v. Afni, Inc., 2013 WL 3791465, *3 (N.D. Oh. July 19, 2013).

In this case, there is no evidence that the two telephone calls at issue were made with the intent to annoy, oppress or abuse the Plaintiff or any other person. FCA only called the party twice over a period of five days and the female(s) who answered the calls never requested that FCA refrain from calling her telephone number. *See* Kube v. Creditors Collection Bureau, Inc, 2012 WL 3848300, *2 (N.D. Ill. Aug. 30, 2012) (there are generally two types of evidence presented to show an intent to harass under § 1692d(5)–where the plaintiff has shown that he asked the collection agency to stop calling and the collection agency nevertheless continues to call and the volume and pattern of the calls themselves). Furthermore, the fact that FCA contacted the unknown female on only two occasions over a period of five days demonstrates that the calls at issue were not made with the intent to annoy, abuse or harass as a matter of law.

As demonstrated above, courts have regularly dismissed plaintiffs' claims pursuant to FED. R. CIV. P. 56 in cases involving calls far greater in volume than occurred in this case. Accordingly, in light of the above-referenced case authorities, Plaintiff's claim that FCA violated § 1692d(5) is without merit and should be dismissed.

### B. FDCPA § 1692d(6)

Section § 1692d(6) provides that it is a violation of § 1692d for a debt collector to place telephone calls "without meaningful disclosure of the caller's identity," except as provided in section 804 [15 U.S.C. 1692b]. 15 U.S.C. § 1692d(6).

"Section 1692d(6) requires that a debt collector provide 'meaningful disclosure' of its identity when placing a telephone call. Though the statute does not define 'meaningful disclosure,' it is well established that the statute requires debt collectors' employees to disclose

(1) the name of the debt collection company, and (2) that the purpose of the phone call is to collect a debt." Pawelczak v. Nations Recovery Center, Inc., 2012 WL 2192263, *6 (N.D. Ill. June 14, 2012) (citations omitted); *see also* Hutton v. C.B. Accounts, Inc., 2010 WL 3021904, *3 (C.D. Ill. Aug. 3, 2010).

As set forth above, FCA could not have provided the disclosures required by §1692d(6) because it was unable to confirm Plaintiff's identity. Plaintiff was provided with the opportunity to confirm her identity on multiple occasions, but refused to do. Under these circumstances, FCA could not provide disclosures required by § 1692d(6) because it was unaware whether it was speaking with the actual Plaintiff versus a third party. Both FCA representatives who spoke with the unknown female stated that they were attempting to contact Yenma Prendergast to confirm her address for proper delivery of a letter. They also informed the unknown female that they were not able to discuss the subject matter of the call or contents of the aforementioned letter prior to confirming that they were, in fact, speaking with Yenma Prendergast. On both occasions, the Plaintiff refused to confirm her identity or address. *See Joint Statement, ¶¶ 14, 18.*

Any argument that the Plaintiff identified herself as Yenma Prendergast during either telephone call must be summarily rejected. While the female voice on the December 6, 2016 recording did flippantly state "this is Yenma," the voice subsequently refused to confirm her identity and further called her identity into question when it stated "you can go ahead and send whatever you need to send there"—implying that the female voice on the line did not, in fact, belong to Plaintiff. *See Joint Statement, Exhibit D.* Under these circumstances, it was reasonable for FCA to be increasingly suspicious of the identity of the unknown female during the second call due to the fact that the female refused to identify herself or confirm any information during the prior December 2, 2016 telephone call.

This record is unequivocal that the two calls made by FCA were not made to deceive, annoy, oppress, or abuse the Plaintiff. Rather, the calls were made in an attempt to contact Yenma Prendergast to discuss her debt and FCA's representatives refused to provide any additional information regarding the purpose of the calls until the female voice confirmed its identity in an effort to protect the confidential personal information of the Plaintiff. In fact, if FCA's representatives disclosed that they were calling to collect a debt prior to confirming the Plaintiff's identity, FCA's representatives could have violated 15 U.S.C. § 1692c(b), which precludes debt collectors from disclosing information to third-parties. In other words, FCA's representatives were not obligated to state the identity of their employer because the unknown female refused to confirm her identity such that it was impossible for FCA to determine whether they had contacted a Yenma Prendergast, let alone the Yenma Prendergast associated with the underlying debt.

Based on the circumstances presented, FCA did not violate FDCPA § 1692d(6) as the Plaintiff's refusal to confirm her identity prevented FCA's representatives from disclosing that they were a debt collector or that the purpose of their calls was to collect a debt. Accordingly, summary judgment to FCA is appropriate.

## V.     FCA was Not Deceptive and Did Not Violate the FDCPA

The Plaintiff's Complaint, in a last ditch effort to attribute liability to FCA, alleges that FCA "[w]as otherwise deceptive and failed to comply with the provisions of the FDCPA." (Dkt. 1, ¶ 28).

It is well settled that speculative or conclusory allegations alleging violations of the FDCPA are insufficient to state a claim or defeat a defendant's motion for summary judgment. *See e.g.,* Downs v. Indy Mac Mortg. Services, FSB, 2013 WL 5201602, *3 (S.D. Ill. Sept. 13,

2013); see also, Saccameno v. Ocwen Loan Servicing, LLC, 2015 WL 7293530, *7 (N.D. Ill. Nov. 19, 2015); Chiang v. Verizon New England, Inc., 595 F.3d 26, 42 (1st Cir. 2010). Here, the Plaintiff's allegation that FCA was "otherwise deceptive and failed to comply with the provisions of the FDCPA" is speculative, conclusory and insufficient to create an issue of fact in response to the instant motion.

## CONCLUSION

In light of the foregoing, it is respectfully requested that the Court dismiss the Plaintiff's Complaint in its entirety with prejudice, together with such other and further relief as the Court deems just and proper.

## MEET AND CONFER REQUIREMENT

In accordance with the Court's Rule, on July 7, 2017, defense counsel sent a letter advising Plaintiff's counsel of the basis for the instant motion, including relevant legal authority. On July 13, 2017, Plaintiff's counsel responded by email communication, wherein he advised defense counsel that he disputed the basis of FCA's proposed motion for summary judgment as well as the arguments set forth in defense counsel's July 13, 2017 letter. Despite these communications, Plaintiff and FCA were not able to agree on the resolution of any part of FCA's proposed motion for summary judgment.

DATED:     October 6, 2017          LIPPES MATHIAS WEXLER FRIEDMAN LLP

/s Brendan H. Little
Brendan H. Little, Esq.
Attorneys for Defendant
First Choice Assets, LLC
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
P: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2017, I electronically filed the foregoing Memorandum of Law in Support of Motion for Summary Judgment via the CM/ECF system, which should then send notification of such filing to all counsel of record.

/s Brendan H. Little
Brendan H. Little, Esq.