UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YENMA PRENDERGAST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 316 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| FIRST CHOICE ASSETS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant First Choice Assets, LLC ("FCA") is a debt collector that called Plaintiff Yenma Prendergast twice, attempting to identify her and discuss an outstanding loan they were trying to collect. The FCA employees did not identify their employer nor explain that they were trying to collect a debt during either of the phone calls. Prendergast filed a lawsuit against FCA, arguing that its phone calls violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. The parties have filed cross motions for summary judgment. Because the Court finds that there is no genuine issue of material fact preventing it from determining that FCA's communications with Prendergast violated two provisions of the FDCPA, the Court grants summary judgment in favor of Prendergast with regard to those two violations.

## BACKGROUND[1]

Prendergast incurred a debt with JB Robinson Jewelers (the "Debt") and stopped paying the account in August 2016. JB Robinson Jewelers sold the Debt to DNF Associates ("DNF") at some point prior to December 2016. DNF then hired FCA to collect the Debt.

---

[1] The facts in this section are derived from the joint statement of undisputed material facts [16] and accompanying exhibits. All facts are taken in the light most favorable to the non-movant in each motion.

FCA contacted Prendergast twice regarding the Debt. First, on December 2, 2016, an FCA employee named Louis called Prendergast. Without identifying himself beyond his first name, Louis told Prendergast that he wanted to confirm her address. Prendergast asked Louis for the purpose of his call, and Louis stated "[i]t's in regards to a letter that we are supposed to be mailing." Doc. 16 ¶ 14. Prendergast again asked Louis why he was calling, and he responded "[w]ell as far as the contents of the document are concerned unfortunately the only way I can disclose them would be if I uh know who I am speaking with first uh and I have to confirm some information uh yea so that's it, either I you know I can mail it to the address we have or its [sic] up to you." *Id.* Prendergast responded, "[y]ou can go head and mail it I'm not going to disclose any information." *Id.* After the first call, Louis noted in the FCA computer system: "Called Out/Talked to Other: [Prendergast's phone number]- female would not disclose any info whatsoever, wouldn't even say whom she was." *Id.* ¶ 16.

Second, FCA employee Jennifer Heebner[2] called Prendergast on December 6, 2016. Heebner identified herself only by name, and stated that she was calling to "confirm location information for Yenma Prendergast." *Id.* ¶ 18. Prendergast asked who was calling, and Heebner repeated only that she was Jennifer Heebner. *Id.* The conversation continued as follows:

"Yenma: Ok, this is regarding?

Caller: It's for the proper delivery of a required letter for Yenma.

Yenma: And this letter is regarding?

Caller: Um well I the thing is I am not sure who I am speaking to if I know who I am taking [sic] to or if this is Yenma I would be more than happy to let you know what its regarding, but I can can't give out her information, to a third party its [sic] against the law, can I ask who I am speaking with?

---

[2] The parties spell Heebner's name at least three different ways in their summary judgment briefing. Because Heebner is the version most frequently used, that is how the Court spells it.

> Yenma: Ok. This is Yenma.
>
> Caller: Oh ok great than [sic] I would be more than happy to let you know what it is. The address I have on file is 11134 S. Ave. E, Chicago, IL 60617, is that still a good address for you?
>
> Yenma: You can go ahead and send whatever you need to send there.
>
> Caller: Ok cuz there actually has already been a required letter already sent out to that address and we did receive [sic] any type of a response, so that is why we are contacting you directly. Now if you like I can let you know exactly what that letter was regarding but I would first have to confirm the last 4 of your SS for security purposes.
>
> Yenma: I would not I would not like to give that info over the phone
>
> Caller: I have your whole social, if you want Ill [sic] give you the first 5 but I do need for you to confirm the last 4 [REDACTED] as the first 5
>
> Yenma: I'm still not going to discuss my social over the phone
>
> Caller: I have your social we are not asking you to discuss it, I'm asking you to confirm it so I you are the right party it's so we won't give information to the wrong person, its [sic] for your own protection
>
> Yenma: I'm not going, ok like I told someone else ok but I'm still not going to say it over the phone, if you are saying my social or possibly what social is and someone else could get that information
>
> Caller: Well I already gave you the first 5 well no-no-nobody can hear the information cuz we are on um a recoded [sic] line, which is secured. I did already give the first five as I said I have your whole entire social this is for your protection so we don't give out your information to the wrong person, its so I know you are the correct Gem-Yemna Prendergast attached to this file. Once you confirm that-I am not asking you to give me anything I am asking you to confirm what I have.
>
> Yenma: I have another call I need to take I'm sorry, look I'm actually at work right now and I can't . . ."

*Id.* After the second call, Heebner noted in FCA's system: "Called Out/Talked to: Other—refused to confirm ssn." FCA's Operations Policy Handbook instructs collectors to try to confirm a consumer's identity using their date of birth if the consumer does not want to reveal

3

his or her social security number, although neither of the collectors who called Prendergast tried to confirm her identity using her date of birth.

After the phone calls, Prendergast brought this suit, alleging multiple violations of the FDCPA, 15 U.S.C. §1692, *et seq*. According to Prendergast, the calls violated: (1) 15 U.S.C. § 1692d, for engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; (2) 15 U.S.C. § 1692d(6), for placing a phone call to a consumer without meaningful disclosure of the caller's identity; (3) 15 U.S.C. 1692e(11), for failing to disclose that their communication was from a debt collector and that any information obtained during the communication would be used for the purpose of collecting a debt; (4) 15 U.S.C. § 1692g(a), for failing to provide the consumer with notice of the debt within five days after initial communication with the consumer; and (5) generally acting deceptively and failing to comply with the FDCPA. After conducting discovery, both parties have moved for summary judgment.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue

for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

In her motion for summary judgment, Prendergast argues that the Court should grant summary judgment in her favor on two of the violations of the FDCPA that she alleges in her complaint—violations of 15 U.S.C. §§ 1692d(6) and 1692e(11). FCA, on the other hand, urges this Court to grant summary judgment in its favor on all of the FDCPA violations that Prendergast alleges. The Court will address each of the various sections in turn.

To establish a claim under the FDCPA, Prendergast must prove that (1) FCA qualifies as a "debt collector" as defined in § 1692a(6), (2) the actions of which she complains were taken "in connection with the collection of any debt," and (3) the actions violated one of the FDCPA's substantive provisions. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (citation omitted) (internal quotation marks omitted). The joint statement of undisputed facts unambiguously establishes that FCA "is a debt collector and at all times relevant was collecting a consumer debt as defined by 15 U.S.C. § 1692a" and, at the time of the two phone calls, FCA "attempted to contact [Prendergast] in an attempt to collect the alleged debt." Doc. 16 ¶¶ 10, 13. The only question that remains is whether FCA's phone calls violated a provision of the FDCPA.

### I. Section 1692d(6)

Debt collectors cannot make phone calls "without meaningful disclosure of the caller's identity," except as provided in § 1692b. 15 U.S.C. § 1692d(6). Courts have decided that

5

meaningful disclosure requires the debt collector's employees to disclose the name of their company and the fact that the purpose of the call is debt collection. *Pawelczak v. Fin. Recovery Servc., Inc.*, 286 F.R.D. 381, 387 (N.D. Ill. 2012).

The two parties do not dispute that the FCA callers did not meaningfully identify themselves within the meaning of the statute when they called Prendergast. A review of the transcripts of both phone calls clearly establishes this—neither caller explained that the purpose of the call was debt collection or that they worked for FCA. Doc. 16 ¶¶ 14, 18. The question that these motions raise is whether § 1692d(6) even applies to the phone calls, where the FCA callers were unable to confirm certain identifying information about Prendergast. If this provision covers FCA's phone calls with Prendergast, then it is clear from the facts established in the undisputed statement of facts that FCA violated it.

FCA argues that the callers were unable to confirm Prendergast's identity and so the disclosure requirements of § 1692d(6) do not apply. FCA provides no legal support for its contention that the disclosure requirements of this section only applies after a debt collector has confirmed the consumer's identity. But the Court need not reach this question, because these are not even the facts presented before it. FCA does not dispute that the person on the other end of both of the calls to Prendergast's phone number was in fact Prendergast; rather, it argues that its callers had no way of knowing at the time of the phone calls that they were speaking to Prendergast. The callers both knew that they were calling the phone number associated with Prendergast's account. In the second phone call, Prendergast explicitly stated: "This is Yenma." Doc. 16 ¶ 18. This is clear confirmation of Prendergast's identity. FCA discredits this confirmation, positing that it is "insufficient as a matter of law" because the statement was "flippant" and Prendergast then "refused to confirm any other identifying information." Doc. 20

at 7. However, FCA provides no support for these characterizations. FCA was speaking to the consumer, who identified herself by name. At this point, once Prendergast identified herself, the requirements of § 1692d(6) become entirely clear: Heebner needed to state that she worked for FCA and was calling to collect a debt, and she did not.

     FCA also argues that it is clear that its callers did not know whether they had contacted Prendergast because of the notes that they made in the system after the call. Even conceding that FCA is correct that its callers were uncertain that they had reached Prendergast (a fact of which the Court is doubtful, particularly in the case of the second phone call), FCA fails to identify why the callers' opinions would be relevant. These facts are immaterial; again, FCA was speaking to the consumer, who had identified herself by name. At this point, the impressions of the caller do not factor into the Court's analysis. Moreover, to the extent that FCA argues that Prendergast was "playing coy," Doc. 18 at 2; Doc. 20 at 4, in her responses to their phone calls, they fail to support this with any facts. In response to their requests to confirm her address, Prendergast responded both times that any mail could be sent to the address that the callers mentioned. This information, especially coupled with her self-identification in the second call, indicates a confirmation of her address. The only other identifying information discussed on the call was Prendergast's social security number, and the Court finds it ridiculous to suggest that declining to provide one's security number to an unidentified stranger over the phone is somehow evasive or "coy" behavior.

     FCA argues that its callers were entitled to confirm Prendergast's address (two were associated with her account) and/or social security number before disclosing the necessary information about itself. FCA does not point to any portion of the FDCPA that qualifies the disclosure requirements in this way. It relies only on an unreported case from the District Court

7

of Kansas to support this contention, which noted that "[u]nder the FDCPA, when a debt collector is unable to confirm the debtor's identity via the debtor's Social Security number, the debt collector must terminate the call." *Galligan v. FMS, Inc.*, No. 11-2004-JAR-JPO, 2012 WL 1207214, at *4 (D. Kan. Apr. 11, 2012). The only support the *Galligan* court provided for this contention was a reference to 18 U.S.C. § 1692(b)—the Court presumes this was a reference to either §§ 1692b or 1692c(b), which the Court addresses below. To the extent that the *Galligan* court intended to require that consumers confirm their social security numbers before the FDCPA's disclosure requirements apply to debt collectors, this Court respectfully disagrees. The FDCPA includes no such requirement. If this were the rule, consumers would need to give their social security numbers out to random unknown callers before the caller even disclosed the purpose of the call. Given the rampant identity theft problems that today's consumers face, this outcome would be absurd.

      FCA also argues that it did not violate the disclosure requirements of § 1692d(6) because the phone calls fall within the provision's exception for calls made pursuant to § 1692b. The plain language of the statute prevents this interpretation of the FDCPA: § 1692b provides that debt collectors "communicating with any person *other than the consumer* for the purpose of acquiring location information about the consumer shall . . . only if expressly requested, identify his employer [and shall] not state that such consumer owes any debt." 15 U.S.C. § 1692b (emphasis added). When its callers placed those two phone calls in December 2016, they did not communicate with any person other than the consumer—they communicated with the consumer. *See Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560, 569 (D.S.C. 2014). As noted in *Chatman*, the argument that potential liability for § 1692b absolves debt collectors from complying with other provisions of the FDCPA "is nothing more than a creative attempt to avoid the clear

8

mandates of Section 1692d(6) and 1692e(11)." *Id.* at 570. This Court understands that this could occasionally place debt collectors between a rock and a hard place if the caller truly cannot determine whether they are on the phone with the consumer or a third party. But this is not that situation: they called a number associated with Prendergast, and the person who answered identified herself as Prendergast. There is no dispute with regard to these facts, and so Prendergast is entitled to summary judgment on this claim.[3]

## II.     Section 1692e(11)

Debt collectors must "disclose in the initial . . . communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). FCA's primary argument, that § 1692e(11) does not apply because its callers were not certain they were speaking with the consumer, fails for the same reason it fails regarding § 1692b(6). However, FCA also argues that it did not violate the disclosure requirements of § 1692e(11) specifically for two reasons. First, it argues that the phone calls do not constitute communications under the meaning of the FDCPA, and so no initial communication was made that would trigger the requirements of § 1692e(11). Second, it argues that the Seventh Circuit has imposed a materiality requirement on any violation of § 1692e, and any violation made by its phone calls were not material.

The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Though a few courts have held otherwise, many persuasive authorities have interpreted this definition broadly and have concluded that this definition includes communications between debt collectors and consumers where the debt collectors do not specifically mention the debt. *See Ramirez v.*

---

[3] The same analysis is true regarding liability under § 1692c(b), which prohibits communications with third parties regarding the collection of a debt. *See Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 658 (S.D.N.Y. 2006).

9

*Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1041–42 (N.D. Ill. 2008) (finding an FDCPA communication where the debt collector left a voicemail without identifying itself and merely "request[ed] that the Plaintiff return their calls"); *Lee v. Robinson, Raegan & Young, PLLC*, No. 3:14-cv-0748, 2015 WL 328323, at *6 (M.D. Tenn. Jan. 26, 2015) (same) (collecting cases); *but see Brody v. Genpact Servs., LLC*, 980 F. Supp. 2d 817, 820–21 (E.D. Mich. 2013) (finding no FDCPA communication where the caller merely stated his name and company and asked that the consumer call him back). The Court finds these cases persuasive. FCA objects to this line of cases and the cases cited by Prendergast as distinguishable on the grounds that these case involved voicemails left by the debt collector. However, FCA does not explain why a voicemail where the debt collector does not identify itself and merely "requests that Plaintiff return their calls" should be distinguishable from the present situation. At any rate, both callers reached Prendergast over the phone, identified their names, and informed Prendergast that they were calling regarding the delivery of a letter. Doc. 16 ¶¶ 14, 18. Under this line of cases, this is sufficient to constitute a communication under the FDCPA.

FCA also argues that any violation of §1692e must be material in order to be actionable. FCA is correct that "[g]enerally, §1692e only protects against false statements that are material." *Evans v. Portfolio Recovery Assocs.*, LLC, --- F.3d ----, No. 17-1773, 2018 WL 2035315, at *7 (7th Cir. May 2, 2018). However, it is not clear that this materiality requirement applies § 1692e(11) specifically—and if it does, violations of § 1692e(11) are *per se* material. The Fourth Circuit explicitly rejected imposing materiality on this specific provision. *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) (abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, --- U.S. ----, 136 S. Ct. 663, 193 L.Ed. 2d 571 (2016)). Multiple courts in this district have also questioned whether materiality applies, considering the Seventh

Circuit's reasoning in *Janetos v. Fulton Friedman & Gullace, LLP*. *See Heyler v. Pierce & Assocs., P.C.*, No. 14 C 854, 2017 WL 75739, at *13 n.5 (N.D. Ill. Jan. 9, 2017) (noting "[i]t is not at all clear that the materiality requirement applies to omissions under Section 1692e(11)"); *Smith v. Greystone Alliance, Inc.*, No. 09 C 5585, 2015 WL 4325495, at *6 (N.D. Ill. July 15, 2015) (holding that disclosure of the "purpose of the message is the epitome of materiality because [the consumer] could not intelligently decide how to respond without knowing what the message concerned"). In *Janetos*, the Seventh Circuit noted that a general materiality requirement for § 1692e was necessary because its provisions "are drafted in broad terms," and so courts need to determine "whether [a claim] represent[s] the kind of conduct the Act was intended to eliminate." 825 F.3d 317, 324 (7th Cir. 2016). The court contrasted that with the disclosure requirements of §1692g(a), where Congress had already decided that the FDCPA should penalize certain failures to disclose, and held there was no need for individual inquiry regarding materiality in that situation. *Id.* Section 1692e(11) is similar to §1692g(a) in this regard—Congress has already decided that the FDCPA should penalize a debt collector's failure to disclose certain information.

  The Seventh Circuit's recent decision in *Evans v. Portfolio Recovery Associates* further undermines FCA's attempt to impose an individual materiality requirement. There, the circuit court held that any violation of § 1692e(8) would always be material. *Evans*, 2018 WL 2035315, at *8 (to violate §1692e(8), debt collectors "omit a piece of information that is *always* material, namely, that the consumer has disputed a particular debt" (emphasis in original)). Like §1692e(11), § 1692e(8) contains a higher level of specificity than § 1692e generally. Applying the reasoning in *Janetos* and *Evans* to § 1692e(11), it appears as though Congress has already determined the materiality question for the courts. Rather than the broad strokes of other

11

portions of §1692e, the provision specifically requires debt collectors to disclose to consumers in their initial communication that they are debt collectors and that any information they obtain will be used to collect a debt. Even if an individual inquiry were necessary on the materiality issue, the FCA callers' failure to reveal the purpose for their calls deprived Prendergast of the opportunity to intelligently respond to the callers' questions, "the epitome of materiality." *Smith*, 2015 WL 4325495, at *3. FCA has not shown a genuine issue of material fact regarding §1692e(11), and so the Court grants summary judgment in favor of Prendergast on this provision as well.

### III.     Section 1692d, Section 1692g(a), and "Other Deceptive Conduct"

In its motion, FCA also asks that the Court grant summary judgment in its favor with regard to the other sections that Prendergast raised in her complaint—§§ 1692d and 1692g(a), as well as the "other deceptive conduct" that she mentions in her complaint. Because the Court has already found that FCA violated the FDCPA, it denies FCA's motion regarding these other portions of Prendergast's complaint as moot.

### IV.     Statutory Damages

In light of the Court's finding that FCA violated two provisions of the FDCPA, Prendergast is entitled to statutory damages. *Borcherding-Dittloff v. Transworld Sys., Inc.*, 58 F. Supp. 2d 1006, 1011–12 (W.D. Wis. 1999) ("To obtain statutory damages, a plaintiff need prove only that the debt collector violated the statute."). Prendergast emphasizes that she is entitled to the maximum statutory penalty, and FCA does not address statutory damages in its briefing.

The Court may allow statutory damages up to $1,000. 15 U.S.C. §1692k(a)(2). Although it is within the Court's discretion to decide what amount to award, the FDCPA provides various factors to consider, which include: (1) the frequency and persistence of

noncompliance by the debt collector, (2) the nature of such noncompliance, and (3) the extent to which such noncompliance was intentional. 15 U.S.C. § 1692k(b)(1).

Applying the first factor to this case, FCA made, at most, two phone calls that violated the FDCPA, which violated two different provisions of the statute. Second, the nature of the calls were somewhat threatening—having a stranger call with your social security number and address and refuse to explain the reason for the call would unnerve anyone. And according to Prendergast, the calls made her "paranoid, scared, and worried." Doc. 16, Ex. A ¶ 12. Finally, "even if the violation was not intentional, it was at a minimum, measured and calculated." *Edwards v. Niagara Credit Solutions*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008). According to the joint statement of undisputed material facts, FCA's policy required that its callers confirm either the consumer's social security or birthdate (for some reason, the callers involved here did not ask for birthdate as an alternative to social security number) before they made any of the necessary FDCPA disclosures. FCA chose this policy, which violates the FDCPA, and must face the consequences of its decision. In light of these factors, the Court awards Prendergast $1,000 in statutory damages.

## CONCLUSION

For the foregoing reasons, the Court grants Prendergast's motion for summary judgment [15], awards Prendergast $1,000 in statutory damages, and denies FCA's motion for summary judgment [17].

Dated: May 14, 2018

SARA L. ELLIS
United States District Judge